FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★    JUL 07 2005    ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

RONNIE GRAHAM,

                        Plaintiff,

   -against-

JO ANNE B. BARNHART,
Commissioner of Social Security

                      Defendant.

------------------------------------------------------------- X

04 CV 2231 (ARR)(RLL)

NOT FOR PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff Ronnie Graham brought this action pursuant to 42 U.S.C. §§ 405(g) to review defendant Social Security Commissioner Barnhart's adoption of the decision of the Administrative Law Judge ("ALJ") denying her request for Social Security disability insurance ("DI") benefits. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c). Plaintiff has cross-moved for judgment on the pleadings. For the reasons stated below, defendant's motion for judgment on the pleadings is denied, and plaintiff's cross-motion is granted.

## BACKGROUND

1.    Procedural History

Plaintiff applied for DI benefits on October 28, 2002, alleging an inability to work, beginning September 16, 2002, due to a back condition.[1] R. 51, 53.[2] The application was

---

[1] Plaintiff's prior application for disability benefits, filed in 1998, was denied by the Commissioner in 2002 and was never appealed. The plaintiff now asserts an alleged onset date

1

denied on March 17, 2003, R. 42-43, 46. Plaintiff subsequently requested a hearing, R. 47, and appeared, with counsel, on September 9, 2003, before administrative law judge ("ALJ") Manuel Cofresi. R. 25-41. See 20 C.F.R. § 404.906(b)(4) (elimination fo reconsideration step in test cases). By decision dated September 25, 2003, the ALJ found that plaintiff was not disabled and had the residual functional capacity for the full range of sedentary work. R. 8-18. The Appeals Council denied plaintiff's request for review on May 4, 2004, making the ALJ's decision the final decision of the Commissioner. The instant action was timely commenced.

2.  Non-Medical Evidence

Plaintiff, born September 1, 1956, in North Carolina, was 47 years old at the time of the ALJ's decision. R. 29. He testified that he completed tenth grade and worked as a hotel maintenance worker from 1986 to 1998. R. 29, 30, 57-58. As a maintenance worker, plaintiff moved furniture, painted, applied compound, stripped floors, and moved sheet rock. R. 30-31.

At the hearing on September 9, 2003, plaintiff testified that he injured his back on August 16, 1998, when he fell off a scaffold. R. 30-31. Plaintiff had not worked since the accident. R. 30. Plaintiff testified that following the accident he began seeing Arved Iserlis, M.D., who he continued to see once a week through the date of his hearing. R. 32. Dr. Iserlis prescribed medication, physical therapy, and provided plaintiff with a cane and a back brace. R. 32, 34. Plaintiff saw no other doctors for treatment. R. 40. Plaintiff testified that he asked Dr. Iserlis about the possibility of surgery; the doctor told plaintiff that he could not guarantee

---

of September 16, 2002, which is subsequent to the denial of the prior application. R. 28-29, 148-93.

[2] "R." refers to the administrative record filed with the court by defendant Commissioner.

results. R. 34. Dr. Iserlis also told plaintiff that he would "just have to deal with the pain." R. 34.

Plaintiff stated that his pain medications (Maxidone, Bexstra, and Vioxx) made him drowsy, R. 35, but did not relieve his pain, which he experienced "all the time off and on all day." R. 35-36. Plaintiff testified that the pain was located in his lower back and radiated down to his right knee; occasionally, the pain radiated up to his right arm. R. 36.

Plaintiff testified that due to pain in his legs, he had difficulty walking more than one block without stopping. R. 36. He also stated that he could not sit for longer than thirty minutes at a time. R. 36-37. Plaintiff testified that he could not stand in one spot for more than twenty minutes without moving or walking around. R. 37. He stated that he was unable to lift anything heavy, and had not attempted to lift more than ten pounds since his accident. R. 37-38.

At the time of his hearing, plaintiff lived with his girlfriend who, along with his sister, did the shopping, cooking, cleaning, and laundry. R. 33, 37-38. Plaintiff stated that he spent his days lying down or sitting around. R. 37. He went to church approximately twice each month. R. 38-39. He did not have a driver's license; his family or girlfriend drove him to the doctor. R. 39. Plaintiff also stated that he never took the bus because he could not climb the steps to get on the bus and might have to stand once boarded. Id.

3. <u>Medical Evidence</u>

   A. *Medical evidence prior to alleged onset date of September 16, 2002*

MRI of the lumbosacral spine performed on September 20, 1998, showed rod-like straightening of the lumbar lordosis consistent with muscular spasm, scoliosis convex to the right as well as central focal herniation at L5-S1, causing compression of the thecal sac. R. 103.

Plaintiff was seen by Raymond P. Koval, M.D., an orthopedic surgeon, on December 10, 1998. R. 101. Plaintiff related that he fell a short distance from a scaffold, landing on his left elbow and back, that he first saw Dr. Iserlis three times a week for treatment, and was continuing treatment twice weekly. <u>Id.</u> Dr. Koval noted that electrical testing and reports by consulting physician Dr. Salas showed radiculopathy of the upper and lower extremities. <u>Id.</u> Dr. Koval also noted the MRI results from September 20, 1998. <u>Id.</u> Dr. Koval's examination revealed mild scoliosis with tenderness in the right dorsal, dorsal lumbar, and lumbosacral areas. R. 102. Dr. Koval saw no clinical evidence of herniated disks or radiculopathy and concluded that treatment had been maximized and plaintiff could return to work without restriction. <u>Id.</u>

Plaintiff was re-examined by Dr. Koval on March 29, 1999, at which time Dr. Koval found multiple firm, hard, non-tender lipotamous tumors in plaintiff's upper back and one in the mid-lower back on the right side. <u>Id.</u> Plaintiff had full range of motion, and no muscle spasm. <u>Id.</u> Dr. Koval's partner, Dr. Kenneth E. Seslowe, confirmed that the firm hard masses were most likely lipomas unrelated to the August 1998 injury. R. 100. Dr. Koval concluded that plaintiff had no further disability, needed "no further care or treatment," and "could work

without restriction." Id. On February 22, 2000, upon a third examination, Dr. Koval again concluded that there were no objective findings referable to the August 16, 1998 accident, no evidence of any spinal problems, and "no necessity for any further care or treatment." R. 98.

Plaintiff was examined by neurologist Robert J. Blankfein, M.D., on February 28, 2000. R. 94. Dr. Blankfein reviewed Dr. Koval's three reports and two reports of neurologist Richard Schoenfeldt, M.D., dated November 30, 1999 and December 14, 1999. R. 94. Dr. Blankfein reported that the neurological examination was normal, with "some evidence of local spasm in the right paralumbar region." R. 95. Dr. Blankfein concluded that there was "no evidence of disability" and plaintiff had reached "maximum medical benefit from treatment." Id. Plaintiff was cleared to return to work without restriction the following day. R. 96.

MRI of the lumbosacral spine performed on August 25, 2000, showed straightening of the usual lordosis suggesting muscular spasm and scoliosis convex to the left. R. 93. There was posterior bulging of the intervertebral discs L4-L5 and L5-S1. Id.

Plaintiff saw Dr. Iserlis for physical therapy on the following dates in 2002: January 22 and 30, February 7, 11, 13, 14, 20, 25; March 1, 5, 11, 18; April 2, 9, 18, 25; May 10, 17; and June 3. R. 131-35. All of Dr. Iserlis' notes were completed on standardized check-off forms, with no comments indicated. See R. 115, 128-35, 141-42. On each occasions, plaintiff's chief complaints were noted to be related to the right and left side of his neck, shoulder, and back. Id. "[P]hysical therapy modalities and procedures" used included therapeutic execise, massage, and heat therapy. Id. Dr. Iserlis indicated that plaintiff tolerated treatment well at each visit. Id.

In a re-evaluation on May 10, 2002, Dr. Iserlis noted that plaintiff complained of pain in the right and left neck, lower back, buttocks, and hips; tenderness of the lumbosacral spine; pain radiating from the neck to the right and left buttock, thigh, foot, and toes; weakness, numbness, and tingling of the right and left hands and fingers and of the right and left lower extremities. R. 114. Plaintiff had positive Patrick's and Miligram's tests. Id. There was tenderness in the cervical and lumbosacral spines, with muscle spasm, taut bands, and trigger points in the bilateral parallel neck, low back, and buttock. Id.

B.   *Medical Evidence On or After the Alleged Onset Date of September 16, 2002*

MRI of the lumbosacral spine taken on September 16, 2002, showed exaggerated lordosis of the lumbar spine "suggesting muscular and/or ligamentous laxity." R. 104. The MRI also showed "central herniation of discs at levels L4-L5 and L5-S1 central, with slight compression of the thecal sac." Id.

On January 7, 2003, six months after his last visit with Dr. Iserlis, plaintiff again sought physical therapy, complaining of pain in both sides of his neck and back, and both shoulders. R. 131. Plaintiff visited Dr. Iserlis the following day, and again on February 25, 2003. On both occasions he had the same complaints and received the same treatments. R. 130.

In an undated report, Dr. Iserlis noted that he had been treating plaintiff weekly for lumbosacral and dorsal spine radiculopathy since plaintiff had a job related injury on August 16, 1998. R. 105. Plaintiff's symptoms were pain and swelling in the lower back, right greater than left, with pain radiating to the right lower extremity. Id. Plaintiff also experienced numbness and stiffness, with difficulty ambulating, lifting, and bending, and pain in his left elbow. Id. Dr. Iserlis provided treatment of "physical therapy modules and processes." R.

106. The clinical findings were "muscle spasm right dorsal, low back." Id. Plaintiff was prescribed a lubosacral brace and a cane. R. 106-07. At that time, in Dr. Iserlis' opinion, plaintiff was limited to standing/walking for ten to fifteen minutes; sitting for fifteen to twenty minutes; pushing and pulling was limited in the left upper and right lower extremities, with unspecified manipulative limitations of the left hand noted. R. 107. Dr. Iserlis stated that plaintiff had "decreased ability" to work, and in his opinion, plaintiff's condition was "chronic and prognosis for recovery problematic." R. 107-08.

Plaintiff underwent a consultative examination by Mohammad Khattak, M.D., on Feburary 26, 2003. R. 116-17. Dr. Khattak diagnosed degenerative disc disease of the lumbosacral spine. R. 117. In his opinion, plaintiff's abilities to bend and lift "may be mildly to moderately limited," but plaintiff had no limitations in sitting, standing, walking, or reaching. Id. Gross and fine manipulations of plaintiff's hands were intact, and plaintiff did not need any assistive devices for ambulation. Id.

Plaintiff saw Dr. Iserlis for continuing physical therapy on Februay 25 and 26, April 25, and May 15, 16, 29, and 30, 2003. R. 129-30. In a medical assessment of plaintiff's ability to work, dated May 30, 2003, Dr. Iserlis indicated that plaintiff could lift and/or carry one to three pounds and noted that the medical findings in support of the assessment were severe low back pain, right greater than left, muscle spasm over the right T6-L4 levels, and swelling. R. 125. Noting the same medical findings, Dr. Iserlis indicated that plaintiff could stand or walk for eight to ten minutes without interruption and could sit for fifteen to eighteen minutes. Id. He further noted that plaintiff could walk up only three to four steps, and could never balance, stoop, crouch, kneel, or crawl. R. 126. Reaching, bending, and pushing/pulling were not

7

affected. Id. Dr. Iserlis indicated that plaintiff should avoid extreme cold, dust, and humidity due to continuous pain, muscle spasm, and swelling. Id.

Plaintiff saw Dr. Iserlis for continued physical therapy on June 2, 5, 9, 12 and 17, 2003. R. 141-42. Each time, plaintiff had the same complaints and received the same treatments he had been receiving since January 2002. On June 25, 2003, Dr. Iserlis prescribed Maxidone for "continued persistent decreased range of motion left lumbar spine . . . muscle spasm, muscle swelling over right lumbosacral [spine]."[3] R. 127.

## DISCUSSION

1. Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff is not disabled.

> Under the Social Security Act, a "disability" is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is of such severity that he is unable to perform his previous work and, given his age, education, and work experience he is not able to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner is to consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts,

---

[3] In an August 2003 form submitted to the Social Security Office of Hearings and Appeals, plaintiff reported that he had been prescribed Vioxx, Maxidone, and Bextra for pain by Dr. Iserlis. R. 140.

8

subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980)(citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that had lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such impairment was demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v. Apfel, 1998 WL 788780 at *5 (S.D.N.Y. November 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20 C.F.R. § 404.1520.[4] The Second Circuit has characterized this procedure as follows:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

---

[4]The regulations governing disability determinations for DIB and for SSI are identical. Citations in the remainder of this opinion are to the DIB regulations found in Part 404 of the Social Security regulations. The SSI regulation analogous to the DIB regulation found at 20 C.F.R. § 404.15xx would be at 20 C.F.R. § 416.9xx.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Blueband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

The court's role in reviewing the decisions of the Social Security Administration ("SSA") is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

2. The Treating Physician Rule and ALJs' Duty to Develop the Record

The opinion of a treating physician is given controlling weight if it is well supported by medical findings and it is not inconsistent with other substantial evidence. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(2)). Where the ALJ does not give the treating physician's opinion controlling weight, he is required to provide "good reasons" for this decision. Failure to do so is a ground for remand. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). Moreover, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. Schaal v. Apfel, 134 F/3d 496, 505 (2d Cir. 1998). When a treating physician's opinion "is not

adequately supported by clinical findings, the ALJ must attempt, sua sponte, to develop the record further by contacting the treating physician to determine whether the required information is available." Cleveland v. Apfel, 99 F.Supp.2d 374, 380 (S.D.N.Y. 2000) (citing to 20 C.F.R. § 404.1512(e)).

Plaintiff alleges that the ALJ erroneously rejected the treating physician's opinion. In his decision, the ALJ expressly rejected Dr. Iserlis's opinion, stating:

> In this case there is no evidence at all to support Dr. Iserlis's opinion. He has provided none, while no less than three examining physician[s], one who examined the claimant on three separate occasions over a span of four years, found that the claimant was not disabled. Dr. Iserlis, by contrast, provides nothing more than a conclusory allegation that his patient is incapable of functioning at any level. His assessment is much more severe than any assessments from any other medical source. He fails to cite any diagnostic tests in support, and his opinion is not consistent with the medical evidence of record. His opinion is not entitled to greater controlling weight.

R. 16.

Plaintiff argues that, in rejecting the opinion of plaintiff's treating physician, the ALJ erroneously relied upon the opinions of two consultative physicians who examined plaintiff and rendered decisions long before the period of disability at issue, which commenced on September 16, 2002. According to the record submitted by defendant, plaintiff was examined by only three doctors other than Dr. Iserlis.[5] Dr. Koval, an orthopedic surgeon, examined plaintiff on three occasions – December 10, 1998; March 29, 1999; and February 22, 2000. Dr. Blankfein, a neurologist, examined plaintiff on February 28, 2000. Dr. Khattak examined

---

[5]In his report of February 28, 2000, Dr. Blankfein mentions prior examinations by Dr. Richard Schoenfeldt, a neurologist, on November 30, 1999 and December 14, 1999. Dr. Schoenfeldt's examination notes, however, are not part of the record.

11

plaintiff on February 26, 2003. Due to his reference to "no less than 3 examining physicians," it is clear that the ALJ relied on all three of these opinions. In fact, the ALJ placed express reliance on Dr. Koval's opinion, pointing out that one of the physicians "examined the claimant on three separate occasions." Reliance on examinations conducted and opinions formed in 1998, 1999 and 2000 – more than two years before the alleged onset date of plaintiff's disability – was clearly improper.

Reliance on Dr. Khattak's opinion, plaintiff alleges, was also improper because it was "self-contradictory and should not have been accorded great weight." As plaintiff points out, Dr. Khattak reported that his examination of plaintiff produced no abnormal findings, yet diagnosed degenerative disc disease and opined that plaintiff's "ability to bend and lift may be mildly to moderately limited." The source of these conclusions is unclear. Accordingly, the ALJ could not properly rely on his opinion without securing further information.

Plaintiff also alleges that the ALJ improperly substituted his own opinion for credible medical evidence. "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Rosa v. Callahan, 168 F.3d 72, 78-79 (quoting McBrayer v. Sec. of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). The ALJ found that plaintiff was capable only of "sedentary" work. However, none of the medical opinions upon which he claims reliance found that plaintiff had the residual functional capacity ("RFC") for sedentary work. Drs. Koval and Blankfein each concluded that plaintiff was under no disability, and, as Dr. Koval stated, "could return to his usual occupation without restrictions." R. 98; see also R. 96 (Dr. Blankfein stated that claimant could "return to full work without restrictions"). Dr. Khattak, the state agency medical examiner, by contrast, found that plaintiff had no limitations

in sitting, standing, walking or reaching, or in gross or fine manipulations, and only mild to moderate limitations in bending and lifting. R. 117. Dr. Khattak's conclusions are consistent with an RFC for medium to light work. See 20 C.F.R. § 416.967 ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"; "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). Finally, Dr. Iserlis stated that plaintiff could sit, stand, and walk for intervals of less than one hour, which is consistent only with a finding of complete disability. R. 125.

None of these opinions supports a finding that plaintiff was capable of performing only sedentary work. Although defendant correctly notes that it is the ALJ's responsibility to determine residual functional capacity, see 20 C.F.R. §§ 404.1527(e)(2), the ALJ's determination must be supported by substantial evidence in the record. Here, no evidence supported the ALJ's conclusion that plaintiff had the RFC to perform sedentary work.

Because the ALJ discounted Dr. Iserlis's opinion due to contradictory findings by Drs. Koval and Blankfein, whose opinions predated the onset date, and Dr. Khattak, who failed to provide support for his conclusions, remand is appropriate. On remand, the ALJ should consider only evidence relating to the period of alleged disability at issue, beginning on September 16, 2002. The ALJ must determine, in the absence of these other opinions, whether Dr. Iserlis's opinion was supported by sufficient clinical evidence to be given controlling weight. The ALJ is urged to further develop the record if he deems it necessary.

3.  Plaintiff's Subjective Complaints

Plaintiff alleges that the ALJ also committed error in discrediting his testimony concerning his symptoms and limitations. In making determinations of disability, all symptoms, including pain, must be considered. 20 C.F.R. § 404.1529(a). "When there is conflicting evidence regarding a claimant's pain, the ALJ must make credibility findings," Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999), and as a fact-finder, the ALJ can accept or reject testimony. See Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988). However, the findings of the ALJ must be consistent with the evidence. See Id. at 261. "[A] finding that the witness is not credible must nevertheless be set forth with specificity to permit intelligible plenary review of the record." Id. at 260-61. A court must uphold the Commissioner's decision to discount a claimant's complaints of pain and other subjective complaints if the finding is supported by substantial evidence. Aponte v. Sec. of Health and Hum. Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted). As discussed above, the ALJ erroneously considered evidence in the record stating that plaintiff was not disabled. Upon remand, the ALJ is directed to evaluate plaintiff's subjective complaints of pain in light of the record before him.

## CONCLUSION

For the reasons discussed above, the defendant's motion for judgment on the pleadings is denied, plaintiff's cross-motion is granted, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.[6] The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: June 6, 2005
       Brooklyn, New York

---

[6] Although plaintiff requests remand solely for calculation of benefits, the court believes reconsideration by the ALJ, and further development of the record if necessary, is more appropriate.

SERVICE LIST:

*Counsel for Plaintiff:*
Christopher D. Latham
Brecher, Fishman, Pasternack, Popish, Heller, Rubin & Reiff, PC
222 Broadway, 19th Floor
New York, NY 10038

*Counsel for Defendant:*
Som Romrup
Special Assistant U.S. Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201